IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

HAROLD MADISON                                                                                    PLAINTIFF

v.                                      Civil No. 12-2326

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                                DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Harold Madison, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.   Procedural Background:

Plaintiff filed his application for SSI on November 5, 2010, alleging an onset date of January 1, 2003, due to depression and difficulty being around people. Tr. 122, 154-155, 165, 177. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 75, 79, 82, 84. An administrative hearing was held on October 12, 2011. Tr. 25-72. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 43 years old and possessed a high school education. Tr. 35, 122, 166. He had no past relevant work "(PRW") experience. Tr. 18.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On April 26, 2012, the ALJ found Plaintiff's antisocial traits were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 12-13. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant's capacity for work is limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, work place changes, no more than incidental contact with co-workers or supervisors, and no contact with the general public.

Tr. 13. With the assistance of a vocational expert, the ALJ then concluded that Plaintiff could perform work as an assembler, machine tenderer, and poultry worker. Tr. 19.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 27, 2012. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 7, 8.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age,

3

education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Plaintiff raises several issues on appeal. His contentions are as follows: 1) the ALJ failed to perform a proper credibility analysis; 2) the ALJ erred in his RFC determination; and 3) the ALJ failed to fully and fairly develop the record. The court has reviewed the briefs filed by the parties, the transcript of the proceeding before the commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

### A. Credibility Analysis:

Plaintiff takes issue with the ALJ's credibility determination, alleging that the ALJ failed to conduct a proper credibility analysis. We disagree. After reviewing the evidence and the ALJ's decision, we conclude that the ALJ gave several valid reasons for his determination that Plaintiff was not entirely credible including the absence of objective medical evidence to support his allegations of disability; his failure to seek out treatment from mental health professionals; his history of filing for benefits on several occasions; inconsistencies in his reports of daily activities, conflicting reports regarding his history of drug and alcohol use; and, his symptom exaggeration during mental evaluations. *See Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008) (we defer to the ALJ's credibility determination, because it was based on multiple valid reasons). Clearly, substantial evidence supports the ALJ's credibility determination.

The mere fact that the ALJ did not mention *Polaski* or neatly list out his reasons for discrediting the Plaintiff's subjective complaints does not require remand. *See Brown v. Chater*,

4

87 F.3d 963, 966 (8th Cir.1996) (ALJ's failure to explicitly discuss each *Polaski* factor in a methodical fashion is an arguable deficiency in opinion-writing technique insufficient to require the setting aside of an administrative finding where the deficiency probably had no practical effect on the outcome of the case).

Plaintiff also contends that the ALJ improperly penalized him for failing to seek out mental health treatment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). He believes his behavior is justified because he was unable to afford more consistent care. We disagree. A lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for his alleged pain and disability, as in the present case, is inconsistent with a claim of disabling pain. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992). And, although Plaintiff testified that he attempted to "get into Western Arkansas Guidance and Counseling" but did not have the money to do so, there is no evidence in the record to indicate that he was turned down for treatment. Further, we note that the Plaintiff could have foregone smoking in an effort to better afford treatment and medication, but failed to do so. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999). Therefore, we do not find that Plaintiff's failure to obtain mental health treatment for his complaints is excused by his alleged financial hardship.

**B.    RFC Determination:**

Next, Plaintiff alleges that the ALJ's RFC assessment is flawed. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d

5

731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

      Plaintiff alleges that the ALJ erred by failing to include his memory problems, his need of additional supervision, his mild mental retardation, and the fact that he would likely miss several days of work per month in his RFC assessment. However, we find that the evidence does not support these limitations. The record reveals that Plaintiff was treated at the Good Samaritan Clinic a total of five times during the relevant time period. Tr. 237, 238, 239, 240, 241. He began his treatment for depression in May 2010. Tr. 205, 242. In December, he reported that the Celexa prescribed was no longer effective, and he was experiencing difficulty sleeping. Tr. 240. The doctor prescribed Trazodone and Paxil. He did not return for treatment until April 2011, at which time Plaintiff stated that he did not believe the Paxil was effective. Tr. 239. The

doctor switched him to Zoloft and arranged for him to meet with a counselor. When he returned for follow-up the next month, the record indicates that he did not qualify for medication assistance and had not yet received his Zoloft. Tr. 238. However, his sleep had improved with Trazodone. Accordingly, the doctor prescribed Prozac. At his final follow-up on June 21, 2011, Plaintiff reported feeling better with increased energy. Tr. 237.

The record also contains several mental assessments conducted in conjunction with this application for benefits, as well as previous applications. In September 2006. Dr. Robert Spray examined Plaintiff, and diagnosed him with schizoid personality disorder (provisional) and dysthymia. Tr. 258-261. He estimated Plaintiff's IQ at 80 to 85, but noted that his level of adaptive functioning not consistent with a diagnosis of mental retardation.

In March 2008, Dr. Patricia Walz diagnosed Plaintiff with dysthymia, rule out borderline intellectual functioning, and dependent traits. Tr. 264-268. She estimated his IQ to be between 75 and 85, and concluded that he would have difficulty with complex tasks and would have some impairment in social skills due to anxiety.

In June 2009, Dr. Denise LeGrand assessed Plaintiff with dysthymic disorder and personality disorder not otherwise specified. Tr. 269-275. She estimated him to have low average or above IQ and fair judgment.

On January 17, 2011. Dr. Terry L. Efird examined Plaintiff in conjunction with the application for benefits presently before this court. Tr. 208-211. He diagnosed Plaintiff with panic disorder with agoraphobia and depressive disorder not otherwise specified, and assessed him with a global assessment of functioning score of 55 to 65. Dr. Efird noted that Plaintiff's responses to basic fund of information questions suggested mild mental retardation or borderline

intellectual functioning, but also noted that he had graduated from high school while being enrolled in regular classes. There was no history of special education course work. Plaintiff also reported no history of inpatient or outpatient mental health treatment. Dr. Efird indicated that Plaintiff was able to communicate and interact in a reasonably socially adequate manner and communicate in a reasonably intelligible and effective manner; had the capacity to perform basic cognitive tasks required for basic work-like activities; was able to track and respond adequately for purposes of the evaluation; had no remarkable problems with attention/concentration; generally completed most tasks during the evaluation; appeared to have the mental capacity to persist with tasks if desired; completed most tasks within adequate time frame; and, had no remarkable problems with mental pace of performance.

On September 9, 2011, Dr. Spray re-examined Plaintiff. Tr. 255-257. Testing showed a full scale IQ of 49, evidencing mild mental retardation. However, Dr. Spray opined that these scores were much lower than one would expect based on Plaintiff's educational history. It was his opinion that the results were invalid for several reasons, namely: 1) they were significantly lower than one would expect based upon the Plaintiff's history, 2) Plaintiff exhibited some near miss responses, 3) there was considerable intrasubtest scatter, and 4) a person with Plaintiff's history would not likely score a raw score of 0 on picture completion.

On January 6, 2012, Dr. Walz conducted a second evaluation of Plaintiff. Tr. 280-287. However, after examining Plaintiff and scoring his tests, she also concluded there was "some symptom exaggeration going on." He earned a full scale IQ of 70, which she felt was invalid. And, she could assign no diagnoses aside from exaggeration or malingering and a history of substance abuse versus dependence.

AO72A
(Rev. 8/82)

After reviewing the evidence, we find that substantial evidence supports the ALJ's determination that Plaintiff could perform a full range of work at all exertional levels limited to simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, work place changes, no more than incidental contact with co-workers or supervisors, and no contact with the general public. We can find no objective evidence to support Plaintiff's contention that he suffered from memory deficits, would need additional supervision, or would likely miss several days of work per month. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). While we do note that the IQ tests administered by both Drs. Efird and Walz revealed IQ scores that fell within the range of mental retardation to borderline intellectual functioning, both doctors concluded that the results of the tests were invalid, due to symptom exaggeration and/or malingering. *See Johnson v. Barnhart*, 390 F.3d 1067, 1071 (8th Cir. 2004) (ALJ may reject IQ scores if they are inconsistent with the record). Accordingly, given Plaintiff's ability to obtain his high school diploma without the necessity of special education classes, his ability to care for his mother and himself prior to having to move her into a nursing home, and his ability to live alone, we can not say that the ALJ erred in failing to include mild mental retardation in his RFC determination. *See Miles v. Barnhart*, 374 F.3d 694, 699-700 (8th Cir. 2004) (claimant's educational achievements and ability to live alone properly considered in determining whether IQ scores valid).

### C.     Develop the Record:

In his last argument, Plaintiff contends that the ALJ failed to fully and fairly develop the record in this case. The ALJ does have a duty to fully and fairly develop the record. *See Frankl*

*v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). In determining whether an ALJ has fully and fairly developed the record the proper inquiry is whether the record contained sufficient evidence for him to make an informed decision. *See Payton v. Shalala*, 25 F.3d 684, 686 (8th Cir. 1994); *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). However, in the present case, we find that the record was reasonably well developed.

The ALJ considered the results of several consultative mental evaluations, as well as Plaintiff's subjective complaints and medical records prior to rendering his opinion in this case. There is no indication that additional medical evidence exists to document Plaintiff's condition during the relevant time period. And, given the fact that Plaintiff's two most recent psychological evaluations resulted in malingering and/or symptom exaggeration, we can find no reason to remand the case for further evaluations.

As set forth in the previous section, Plaintiff sought out treatment from his general doctor for depression related symptoms during the relevant time period. He did not seek out treatment from a mental health provider, nor did he seek out treatment for any other alleged impairments. And, it appears that Plaintiff was familiar with the disability process, given that many of the mental assessments were conducted well in advance of the relevant time period, making him more aware that many applicants of his need for objective medical support to bolster his subjective complaints. Accordingly, we can find no reason for remand.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that

10

the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of October 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE